M&I MARSHALL & ILSLEY BANK f/k/a M&I Bank of Menomonee Falls, Plaintiff-Appellant,

v.

Richard W. SCHLUETER and Linda J. Schlueter, Defendants-Respondents.†

Court of Appeals

*No. 02–0884. Submitted on briefs October 10, 2002.—Decided November 6, 2002.*

2002 WI App 313

(Also reported in 655 N.W.2d 521.)

† Petition to review denied 1-21-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas M. Bartell, Jr.* and *JoAnne L. Krabbe* of *Stupar, Schuster & Cooper, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Frank M. Cappozzo* of *Cappozzo Law Office*, Waukesha.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J. M&I Marshall & Ilsley Bank f/k/a M&I Bank of Menomonee Falls (M&I) appeals from a judgment of the circuit court granting summary judgment to Richard W. Schlueter and Linda J. Schlueter (Schlueters). M&I argues that the circuit court erred when it held that the Schlueters, as guarantors on a real estate note, were entitled to notice of default for failure of the original obligors to carry property insurance on the real estate. M&I further

contends that it did not as a matter of law breach its continuous duty of good faith and fair dealing by failing to provide the Schlueters with notice of said default. Finally, M&I claims that the circuit court improperly granted summary judgment where there was a disputed fact pertaining to its receipt of notice of insurance cancellation from the original obligors' insurance company. We agree that the circuit court erred in awarding the Schlueters summary judgment. We therefore reverse the judgment of the circuit court and remand this matter for the circuit court to enter summary judgment in favor of M&I.

## FACTS

¶ 2. On October 28, 1997, David S. Schlueter and Dawn M. Schlueter, son and daughter-in-law of the Schlueters, entered into a mortgage note with M&I. Under the terms of this mortgage note, David and Dawn were allowed to borrow the principal sum of $72,800 and repay the same in monthly installments over the course of sixty months. As security for this mortgage note, David and Dawn executed a real estate mortgage in favor of M&I on property located in Hartford, Wisconsin.

¶ 3. David and Dawn did not qualify for a mortgage on their own. In addition to the real estate mortgage, M&I required additional assurance that the mortgage note would be paid. The Schlueters signed a Guaranty of Specific Transaction on October 28, 1997. The language of this Guaranty obligates the Schlueters to make payments under the mortgage note should David and Dawn fail to pay. In addition, the Guaranty includes a paragraph entitled "Waiver" in which the Schlueters specifically waive notice of default by David and Dawn. The Schlueters received and signed an

Explanation of Personal Obligation which explains that as guarantors, they are obligated to repay the principal sum of $72,800, plus finance charges, in the event of default by David and Dawn.

¶ 4. On August 15, 1999, the insurance policy covering the Hartford real estate lapsed, as evidenced by a letter dated September 8, 1999, from American Family Insurance to David and Dawn. While American Family claims to have sent this lapse notification to M&I, M&I claims that it does not recall receiving any notification nor does it have a copy of said notification. There is no evidence that David and Dawn renewed their American Family policy or that they obtained alternative insurance coverage. On July 17, 2000, the Hartford real estate securing the mortgage note burned.

¶ 5. Following the fire, David and Dawn failed to make any further payments on the mortgage note. On August 28, 2000, M&I notified the Schlueters of David and Dawn's default on the July and August 2000 payments. M&I sent the Schlueters an additional notice of David and Dawn's default on the September, October and November 2000 payments.

¶ 6. M&I then filed this lawsuit against the Schlueters as the guarantors to recover the principal balance plus interest and costs under the terms of the mortgage note and the Guaranty. The Schlueters responded by arguing that as guarantors, they were entitled to receive notice of the default resulting from the lapse of insurance coverage. M&I filed a motion for summary judgment.

¶ 7. In their response brief, the Schlueters produced a termination notice from American Family Insurance to M&I, dated September 7, 1999, informing M&I of the termination of insurance coverage. M&I

disputed receipt of that notice. An affidavit from M&I's retail collection manager specifically states that he did not recall receiving such a notification and his collection file did not contain any such notification.

¶ 8. The circuit court denied M&I's motion for summary judgment and instead granted summary judgment to the Schlueters. The circuit court stated, in relevant part:

> For purposes of this motion, both parties assert that there are no material disputes of fact. The court interprets this as a concession that the presumption of mailing obtains, and therefor the plaintiff will be charged with knowledge of the fact of cancellation of the insurance.

M&I appeals not only to challenge the grant of summary judgment to the Schlueters but also "the authority of the [circuit] court to rule on summary judgment at all when a genuine issue of material fact is in dispute as identified in the brief of the parties."

## DISCUSSION

■■■

¶ 9. We review a circuit court's grant or denial of summary judgment de novo, owing no deference to the trial court's decision. *Waters v. U.S. Fid. & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175 (Ct. App. 1995); *see also*

WIS. STAT. § 802.08(2) (1999–2000).[1] We will reverse a decision granting summary judgment if either (1) the trial court incorrectly decided legal issues, or (2) material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). In our review, we, like the trial court, are prohibited from deciding issues of fact; our inquiry is limited to a determination of whether a factual issue exists. *Id.*

¶ 10. M&I argues that the Schlueters, as guarantors on a real estate note and mortgage, were not entitled to notice of default for failure of the original obligors to carry property insurance on the subject real estate. We agree.

¶ 11. The Wisconsin Supreme Court has ruled on the issue of notice of default to guarantors in *Bank of Sun Prairie v. Opstein*, 86 Wis. 2d 669, 273 N.W.2d 279 (1979).

> "Guaranties of payment 'are absolute, not collateral promises . . . . Unlike the contract of an indorser, there is no condition as to demand and notice of default annexed to a contract of guaranty of payment or of performance.' " Nor is it any defense for a guarantor of payment as distinguished from a guarantor of collection that the creditor "through negligence, or lack of due diligence, lost or dissipated the collateral furnished by the debtor."
>
> *With an absolute guarantee of payment, the law imposes no duty upon the creditor to notify the guarantor of the nonpayment of the note by the principal maker.*

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

*Id.* at 678 (citations omitted; emphasis added). "[N]o notice of the default of an original promisor is required to be given a guarantor of absolute payment or performance to render him liable on the guaranty." *Farmers State Bank of Waupaca v. Hansen,* 174 Wis. 100, 103, 182 N.W. 944 (1921) (citation omitted). A lender is not obligated to alert a guarantor of the original obligor's default or the occurrence of an event of default. *See id.* at 103–04.

¶ 12. In addition, by virtue of the terms of the Guaranty, the Schlueters waived any right to notice they may or may not have had. The Guaranty of Specific Transaction states the following, in relevant part:

> [T]he undersigned jointly and severally guarantee payment of the Obligations defined below when due or, to the extent not prohibited by law, at the time any Debtor becomes the subject of bankruptcy or other insolvency proceedings. "Obligations" mean indebtedness evidenced by a note or agreement payable to Lender . . . .

> **WAIVER.** To the extent not prohibited by law *the undersigned expressly waive notice of* the acceptance of this Guaranty, the creation of any present or future Obligation, *default under any Obligation,* proceedings to collect from Debtor or anyone else, and all diligence of collection and presentment, demand, notice and protest and any right to disclosures from Lender regarding the financial condition of any Debtor or guarantor of the Obligations or the enforceability of the Obligations.

The language of the Guaranty is clear; the Schlueters specifically waived any right to notice of default by David and Dawn and by virtue of the terms of the contract were not entitled to notice.

¶ 13. The Schlueters agree that *Opstein* sets forth the general rule in Wisconsin regarding guaranties but they contend that this general rule does not "fully dispose of the duties between the lender and guarantor"; the Schlueters contend that good faith and fair dealing are implied conditions of every contract and, citing to *First National Bank & Trust Co. of Racine v. Notte*, 97 Wis. 2d 207, 293 N.W.2d 530 (1980), in support, argue that good faith and fair dealing include a duty to disclose David and Dawn's default in failing to maintain property insurance.[2]

¶ 14. First of all, this is not a *Notte* case. *Notte* involved a material misrepresentation or nondisclosure of a creditor during negotiations, before the guarantors entered into the transaction. *Id.* at 208. Here, there has been no showing of any breach of good faith and fair dealing during the negotiations prior to the transaction; consequently *Notte* does not apply.

¶ 15. Furthermore, we agree with the Schlueters that Wisconsin law recognizes that every contract implies good faith and fair dealing between the parties to it. *See Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 577, 431 N.W.2d 721 (Ct. App. 1988). But *Opstein* makes clear that notice of default to a guarantor is not required for good faith and fair dealing. *See Opstein*, 86 Wis. 2d at 678. In addition, where the contracting party complains of acts of the other party that are specifically authorized in their agreement, we cannot see how there can be any breach

---

[2] Because we conclude that M&I had no duty to disclose the insurance lapse default, whether or not M&I received notice of the insurance lapse is not a material fact and is irrelevant in a summary judgment analysis.

of good faith and fair dealing. *Super Valu Stores*, 146 Wis. 2d at 577. "Indeed, it would be a contradiction in terms to characterize an act contemplated by the plain language of the parties' contract as a 'bad faith' breach of that contract." *Id.*

¶ 16. Because *Opstein* holds that there is no duty to provide notice of default to a guarantor and because the Schlueters specifically waived any right to notice they may or may not have had by the terms of the Guaranty, the circuit court erred in granting the Schlueters summary judgment instead of M&I. M&I is entitled to summary judgment against the Schlueters.

## CONCLUSION

¶ 17. We conclude that the circuit court erred when it held that the Schlueters were entitled to notice of default for failure of the original obligors to carry property insurance on the real estate and that M&I did not breach its duty of good faith and fair dealing by failing to provide the Schlueters with notice of said default. We therefore reverse the judgment of the circuit court and remand this matter for the circuit court to enter summary judgment in favor of M&I.

*By the Court.*—Judgment reversed and cause remanded with directions.